**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **REGINA RAINES** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  7:14-CV-062-O-BL** |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge** |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Regina Raines seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his application for supplemental security income (SSI) and under Title XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this court recommends the decision of the Commissioner be affirmed and this case be dismissed.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed her claim for SSI on November 23, 2011, which was denied initially on March 8, 2012, and again upon reconsideration on May 9, 2012. On December 13, 2012, an Administrative Law Judge (ALJ) held a hearing at which Plaintiff testified. In a written decision dated February 1, 2013, the ALJ determined that Plaintiff was not disabled under the Act.

Specifically, the ALJ concluded: Plaintiff had not engaged in substantial gainful activity since the application date; Plaintiff had the following severe impairments: diabetes with neuropathy, hypertension, obesity, arthralgias, and depression; and none of Plaintiff's

1

impairments, alone or in combination, met or equaled one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (Appendix 1). Tr, 49–50. The ALJ also determined that Plaintiff

had the residual functional capacity (RFC):

> to perform a wide range of sedentary work as defined in 20 C.F.R. § 416.967(a).
> She can life and carry 10 pounds occasionally and less than 10 pounds frequently;
> sit 6 hours in an 8-hour workday, and stank/walk 2 hours in an 8-hour workday.
> The [Plaintiff] need a sit-stand option at 1-hour intervals. The claimant is limited
> to no climbing ladders, ropes, and scaffolds; she can perform all other postural
> functions occasionally. She should avoid exposure to hazards and temperature
> extremes and concentrated exposure to vibration. She cannot carry out complex
> instructions or have more than occasional contact with others.

Tr. 51.

The ALJ determined Plaintiff was unable to perform any of her past relevant work. Tr. 56.

However, considering the Plaintiff's age, education, work experience, and RFC, there were jobs

that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 56.

Accordingly, the ALJ determined that Plaintiff was not disabled under the Act, and denied her

application for SSI. The Appeals Council denied review on March 14, 2014. *Id.* at 3–7. Therefore,

the ALJ's decision is the Commissioner's final decision and is properly before the court for review.

*See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final

decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

Plaintiff was born in 1978. She was 33 years old on the date of her application and hearing.

She graduated high school and has past relevant work as a housekeeper and pharmacy technician.

She alleges that she cannot work because of complications with diabetes. She states she has

neuropathy, which causes both her hands and feet to tingle, go numb, and lose feeling. Her hands

and feet hurt constantly and she cannot grasp objects well. Plaintiff has been classified as obese;

at the time of the administrative hearing, she was 5'7" and weighed 315 pounds. Plaintiff also

reports issues with mental health. She states she has depression, anxiety, panic attacks, mood swings, and manic episodes. Plaintiff claims her physical and mental impairments render her disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to

an inquiry into whether substantial evidence supports the Commissioner's findings and whether

the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th

Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial

evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309

F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence

supports the Commissioner's findings, then the findings are conclusive and the court must affirm

the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390

(1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the

evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the

court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d

at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to

resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises three issues on appeal. First, she claims the ALJ's RFC finding is flawed

because the ALJ failed to properly consider opinion evidence from Kim Mitchell-Silver, M.D.,

and Mischa Scales, Ph.D. Second, Plaintiff claims the ALJ did not properly consider the required

factors in assessing Plaintiff's own credibility. Finally, Plaintiff claims the ALJ erred by posing an

incomplete hypothetical question to the vocational expert (VE) at the administrative hearing.

### I. Opinion Evidence

Ordinarily,

the opinions, diagnoses and medical evidence of a treating physician who is familiar
with the claimant's injuries, treatment, and responses should be accorded
considerable weight in determining disability. There are exceptions to this
principle. The ALJ may give less weight to a treating physician's opinion when

4

there is good cause shown to the contrary, as is the case when his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (internal quotation marks and citations omitted); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

It falls to the ALJ to consider the evidence in the record, including contradictory evidence, and assign weight to each piece of evidence considering, *inter alia*, its consistency with the evidence in the record and whether it was obtained by medically acceptable clinical laboratory diagnostic techniques. *See, e.g.*, *Greenspan*, 38 F.3d at 237 ("[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony."); *Scott*, 770 F.2d at 485 ("The [ALJ] is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly."); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) ("[T]he ALJ has the sole responsibility for determining the claimant's disability status.").

### A. Dr. Mitchell-Silver

The ALJ considered evidence from several medical sources, including treating physicians, examining physicians, and reviewing physicians. One treating physician, Dr. Mitchell-Silver, completed a "Physical Impairment Questionnaire" about Plaintiff. Tr. 620–22. In the two page questionnaire, Dr. Mitchell-Silver indicated, with bare minimal explanation, that Plaintiff was considerably limited. As relevant here, Dr. Mitchell-Silver indicated Plaintiff would need to take more breaks than are typically afforded on a worksite, and was substantially impaired as to lifting ability and fine manipulation ability of her hands.

The ALJ also considered the findings and opinions of examining physician Randy Terrell, D.O. Tr. 575–79. Dr. Terrell heard Plaintiff's subjective complaints as to her symptoms, and

performed a physical exam on Plaintiff. Concerning Plaintiff's hands, Dr. Terrell observed that Plaintiff had full motor strength in both hands; her handgrip was "5/5, normal and symmetric." Tr. 577. Dr. Terrell's exam further revealed: "Deep tendon reflexes are normal and symmetric in the upper . . . extremities. There is no evidence of fasciculations, atrophy, or rigidity. Fine finger movements are normal. The claimant has normal ability to handle small objects and button buttons on clothing." Tr. 577. Seemingly the only abnormal finding as to Plaintiff's hands is when Dr. Terrell found "diminished sensation to touch . . . in the left index finger." Tr. 577.

As to Plaintiff's other physical limitations, Dr. Terrell did not opine that Plaintiff was impaired to the degree Dr. Mitchell-Silver suspected. Dr. Terrell observed that Plaintiff "had normal stance and gait, with no signs of ataxia or unsteadiness. [Plaintiff] is able to stand on toes, but not heels. [Plaintiff] is able to bend all the way over and get back up without difficulty." Tr. 577. Additionally, Plaintiff used no assistive device during the exam or to travel to the exam, and she was able to get on and off the exam table unassisted without difficulty. Tr. 575–76.

The ALJ further considered Plaintiff's own statements about her physical abilities, both at the administrative hearing and statements given to medical professionals during examinations. The ALJ noted that Plaintiff herself indicated she had greater physical abilities than Dr. Mitchell-Silver's questionnaire reflected.

It is not clear to what extent Dr. Mitchell-Silver's questionnaire answers were based on medically acceptable clinical laboratory diagnostic techniques and to what extent the answers were based on Plaintiff's account of her symptoms. It is apparent, though, that the questionnaire is relatively brief. The physician is given boxes to tick and very short blanks to fill in, perhaps detracting from the document's persuasive weight. It is also apparent that Dr. Terrell's findings were based on a full physical examination of Plaintiff, perhaps increasing persuasive weight.

Considering Plaintiff's own testimony, the examination results of Dr. Terrell, and the questionnaire filled out by Dr. Mitchell-Silver, not to mention the rest of the 750-plus page administrative record, the ALJ found that the weight of the evidence showed Plaintiff to be not as limited as Dr. Mitchell-Silver's questionnaire indicated. Tr. 55. It was the ALJ's responsibility to make just such a determination. Masterson, 309 F.3d at 272 ("Conflicts in the evidence are for the Commissioner and not the courts to resolve.") (internal quotation marks omitted). Substantial evidence supports the ALJ's conclusions.

## B. Dr. Scales

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

That is, the Psychiatric Review Technique (PRT) is a rating of the severity of a claimant's mental impairments, used at steps 2 and 3. *Id.* The mental RFC is an assessment of specific work-related limitations, used at steps 4 and 5.

The ALJ examined at length the severity of Plaintiff's mental impairments at steps two and three. Tr. 49–50. The ALJ tracked the paragraph B criteria in § 12.00 of the Listing of Impairments, as required by SSR 96-8p, and explained why Plaintiff did not fit the descriptions. I*d*. Next, the ALJ transitioned into an RFC discussion, explicitly noting the incorporation of mental RFC findings and explicitly quoting SSR 96-8p. Tr. 50. Plaintiff's assertion, then, that the ALJ failed

to give proper weight to the PRT of Dr. Scales at steps 4 and 5 is misplaced. The PRT is used at

an earlier phase of the sequential analysis. *See* SSR 96-8p.

## II. Credibility Assessment – Required Factors

SSR 96-7p states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3.

The ALJ's decision makes clear that the ALJ considered the type, dosage, effectiveness,

and side effects of medications Plaintiff had taken to alleviate pain or other symptoms, as required

by the regulations. To begin with, the ALJ explicitly referenced and quoted the above regulation.

Tr. 51–52. Additionally, Plaintiff's brief only notes one of the at least five mentions the ALJ makes

to Plaintiff's medications and side effects. Pl.'s Br. 17; Tr. 52–53, 55. The ALJ further noted

Plaintiff's history of compliance with medications, *e.g.*, Tr. 52–53, their effectiveness, *e.g.*, Tr. 53,

and their type, *e.g.*, Tr. 53. Despite Plaintiff's claim to the contrary, it appears that the ALJ properly

assessed Plaintiff's credibility by considering the type, dosage, effectiveness, and side effects of

the medication Plaintiff had taken to alleviate pain or other symptoms. The ALJ's "[c]redibility determinations are entitled to great deference," and will not be overturned in the presence of substantial evidence to support them. *See McKnight v. Astrue*, 340 F.App'x 176, 180 – 81 (5th Cir. 2009) (unpublished) (per curiam) (citing *Newton*, 209 F.3d at 459); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

## III. ALJ's Hypothetical

At step 5 in the sequential analysis, the ALJ inquires whether a claimant can make an adjustment to work aside from any prior relevant work. *See Audler*, 501 F.3d at 447–48; 20 C.F.R. § 404.1520(a)(4)(v). An ALJ may employ a vocational expert (VE) to provide evidence at the administrative hearing as to the ability of someone with a claimant's impairments to perform jobs in the local and national economy. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). The ALJ poses hypothetical questions to the VE which must reasonably incorporate all of a claimant's disabilities and the VE will testify whether that hypothetical person could perform substantial gainful activity, as defined in the Dictionary of Occupational Titles (DOT). *See, e.g.*, *Boyd v. Apfel*, 239 F.3d 698, 706–08 (5th Cir. 2001). "Unless the hypothetical question posed to the [VE] by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . a determination of non-disability cannot stand." *Bowling*, 36 F.3d at 436. However, reversal is not required when "the claimant is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions (including disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Id.*; *see Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988); *Rodriguez v. Shalala*, 35 F.3d 560 (5th Cir. 1994) (unpublished).

First, though she asserts the ALJ's hypothetical to the VE was "incomplete," Plaintiff does

not articulate in what way it was incomplete. Plaintiff does not state what additional limitations

the ALJ should have incorporated into his hypothetical to the VE. Second, Plaintiff's counsel was

given the opportunity to question the VE to correct any alleged deficiencies in the ALJ's

hypothetical at the administrative hearing. Tr. 36. In fact, following the ALJ's questioning of the

VE, Plaintiff's counsel imposed additional limitations and the VE testified that while a "final

assembler" position would no longer be feasible for the hypothetical person to perform, "order

clerk" and "charge account clerk" positions would still be possible for Plaintiff's hypothetical

person to perform. Tr. 36. Plaintiff fails to show reversible error relating to the ALJ's questioning

of the VE. Because substantial evidence supports the ALJ's determinations, his decision is

conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner

be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United

States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific.  Failure to file specific written objections will bar the

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 19th day of August, 2015.


_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**